## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DONNA COPELAND,**           Plaintiff,           v.           **DISTRICT OF COLUMBIA,**           Defendant. | Case No. 13-cv-00837 (CRC) |

### MEMORANDUM OPINION

Donna Copeland has brought suit under the Individuals with Disabilities Education Act alleging that the District of Columbia Public Schools ("DCPS") denied her minor son D.C. a free and appropriate public education ("FAPE") by failing to assign him to any school at the beginning of the 2011–2012 school year and eventually placing him in a school that could not meet his educational needs.  The hearing officer who adjudicated Copeland's due process complaint at the administrative level found that DCPS denied D.C. a FAPE by initially failing to assign him to a school.  But he did not award a remedy for the violation after finding that D.C. had waived any relief by accepting tutoring in connection with the settlement of an earlier administrative complaint.  Because the record does not establish that D.C. waived his right to recovery and the record is insufficient to determine whether D.C. received sufficient compensation under the earlier settlement to remedy the violations found by the hearing officer, the Court will remand the case to the hearing officer to make further factual findings.

**I.     Background**

While the legal issues presented in this case are relatively straightforward, the factual background is anything but.  The Court will attempt to summarize the salient facts.  At the center of the story is D.C., who at the time of the administrative proceedings was 17 years old and still in the

9th grade. Administrative Record ("AR") at 22. D.C.'s experience in the public school system was sadly familiar: chronic truancy, failing grades (he repeated the 9th grade three times), and a range of academic, emotional, and behavioral challenges. Id. at 27. Due to these issues, D.C. received specialized education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., based on an Individualized Education Plan ("IEP") developed by DCPS.

### A. The 2011 Administrative Complaint and Settlement

In August 2011, D.C.'s father, who has since passed away, filed an administrative complaint against DCPS challenging its alleged failure to update D.C.'s then-existing IEP. AR at 41. DCPS immediately settled the complaint by agreeing to convene an IEP team meeting within 30 days after D.C.'s parents obtained an independent psychological examination of D.C. Id. at 49, 83, 130. After significant delay, D.C.'s parents provided the examination report in March 2012, and DCPS convened the IEP meeting three months later, in June 2012, outside the 30 days agreed to in the settlement. Id. at 137–44.

The day after the IEP meeting, DCPS sent a letter to D.C.'s family authorizing him to receive 150 hours of independent instruction and a combined 60 hours of independent speech and language and behavioral services. Def. Response to Order of the Court, December 5, 2014, Ex. 1 (Compensatory Education Services Authorization Letter). The letter indicated that "these compensatory education services are intended to remediate any educational harm to [D.C.] through today's date [i.e., June 6, 2012]." Id. After receiving the letter, the family's lawyer requested that DCPS amend the quoted language, arguing that the letter was designed only to remediate educational harm to D.C. related to the August 2011 settlement agreement. AR at 155. After DCPS declined to amend the language—which it claimed was "standard"—the lawyer advised DSPS that "we treat this authorization as DCPS' determination of comp[ensatory] ed[ucation]

2

pursuant to the August 30, 2011 [settlement agreement], as that was the requirement at the meeting." Id. at 153. DCPS appears not to have responded further on the issue.

### B. The 2011–2012 School Year and 2012 Administrative Complaint

Meanwhile, pending the adjustment of D.C.'s IEP pursuant to the August 2011 settlement agreement, D.C.'s parents sought to enroll D.C. in school for the 2011–2012 school year. That proved difficult to say the least. D.C. first tried to enroll in Eastern High School. AR at 261. After some initial confusion, DCPS informed D.C.'s parents in October 2011 that he was not eligible to attend Eastern. Id. DCPS offered instead to enroll D.C. in either Woodson Senior High or Spingarn Senior High, but D.C. declined to attend either school. Id. at 260–62. Finally, in March 2012, DCPS changed D.C.'s school placement to Anacostia Senior High School. Id. at 108. D.C. enrolled in Anacostia but stopped attending classes within a week. Id. at 113, 405.

In December 2012, D.C.'s mother, Donna Copeland, filed a new administrative complaint alleging IDEA violations related to the 2011–2012 school year. (Recall that the earlier 2011 complaint challenged D.C.'s placement for the *2010-2011* school year.) Copeland's complaint alleged that DCPS denied D.C. a FAPE by (1) delaying the IEP meeting for 90 days after receiving the independent psychological examination in violation of the August 2011 settlement agreement; (2) failing to provide a school location for D.C. from December 2011 to March 2012 (when he was finally assigned to Anacostia); (3) assigning D.C. to Anacostia, which she contended could not meet his IEP; and (4) generally failing to provide adequate special education services for the entire 2011-2012 school year. AR at 201–202.

An administrative hearing was held on February 21, 2013. At the outset of the hearing, opposing counsel debated the scope of the IDEA violations that the June 2012 compensatory education authorization letter was designed to remedy. After some back-and-forth, both sides appear to have agreed that the letter covered the period "November 1, [2011] to March 23, [2012]."

AR at 337–38. Based on that understanding, D.C.'s counsel withdrew his second claim—that DCPS had failed to provide D.C. with a school location from December 2011 to March 2012. Id. Near the end of the hearing, however, counsel for DCPS retracted her agreement that the letter only encompassed DCPS's failure to provide a school placement from November 2011 to March 2012, asserting that she had said the letter covered more than that specific date range. Id. at 568–71. Counsel for D.C. naturally responded by requesting permission to renew his second claim, but the hearing officer denied his request. Id. at 572.

Also at the hearing, counsel for D.C. sought to introduce D.C.'s tutor, Christian Roman, as an expert "in compensatory education for students with denials of FAPE." AR at 456. The hearing officer declined to admit Roman as an expert, however, stating that he was "not familiar with such an expertise." Id. at 457. But Roman was permitted to testify based on his personal experience and opined that Anacostia was not an appropriate placement for D.C. because it did not offer any special education programs other than a general after-school class. Id. at 488–92.

At the conclusion of the hearing, the hearing officer found that DCPS denied D.C. a FAPE by failing to convene an IEP meeting within 30 days of receiving D.C.'s psychological evaluation, which he concluded had harmed D.C. by delaying an increase of his special instruction from 2 to 15 hours per week. AR at 11–12. The hearing officer also found that DCPS had failed to provide D.C. with an adequate school placement from the start of the 2011–2012 school year until October 2011, when it allowed D.C. to enroll in either Woodson or Spingarn. Id. at 16. The hearing officer rejected Copeland's claim that Anacostia was an inappropriate placement. Id. at 15–16. He explained that Copeland's only evidence on that issue was D.C.'s testimony that he did not feel safe at the school, which the hearing officer declined to credit. Id. The hearing officer did not address Mr. Roman's lay testimony that Anacostia could not implement D.C.'s IEP. Id. at 16.

Although the hearing officer found that DCPS had denied D.C. a FAPE, he concluded there was no remedy for the violation because D.C. had accepted the services outlined in the June 2012 compensatory education authorization letter. AR at 16. Relying on his "broad discretion to fashion an equitable remedy," the hearing officer reasoned that

> DCPS agreed to provide the student with 120-125 hours of compensatory compensation . . . . When Petitioner's Counsel sought a change in the authorization letter to state that the compensatory education was provided "pursuant to the 8/30/2011 SA," DCPS refused this change. Petitioner then had the choice of rejecting DCPS' compensatory education authorization or accepting it on the terms upon which it was offered.

Id. at 19. The hearing officer continued that "[e]ven if Petitioner had not accepted DCPS' compensatory education authorization, her evidence does not establish that the compensatory education [D.C.] received was inadequate to compensate for DCPS' denial of FAPE." Id. at 20.

Copeland then filed suit in this Court on D.C.'s behalf, seeking a declaration that DCPS violated the IDEA and an injunction ordering DCPS to convene a new IEP and fund additional compensatory education. The case was referred to a Magistrate Judge. After the parties filed cross motions for summary judgment, the Magistrate Judge issued a Report and Recommendation in favor of DCPS largely for the reasons found by the hearing officer. Copeland has timely objected to the Report and Recommendation, which the Court reviews *de novo*. Means v. District of Columbia, 999 F. Supp. 2d 128, 132 (D.D.C. 2013) (citing Gardill v. District of Columbia, 930 F. Supp. 2d 35 (D.D.C. 2013)).

## II.   Standard of Review

Summary judgment is appropriate if the pleadings, discovery materials, and admissions on file, together with any affidavits or declarations, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are only those that may affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court draws all reasonable

inferences in the non-movant's favor and accepts as true all competent evidence of the non-movant. Id. at 255.

In reviewing the findings and decision of an administrative hearing officer in an IDEA case, the Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Where neither party requests that the Court consider additional evidence, "'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" Savoy v. District of Columbia, 844 F. Supp. 2d 23, 30 (D.D.C. 2012) (quoting Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997)). The hearing officer's findings are owed "'less deference than is conventional' in administrative proceedings." Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)). But the Court should "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." Savoy, 844 F. Supp. 2d at 30 (quoting S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)).

**III.   Analysis**

Copeland contends that DCPS denied D.C. a FAPE by failing to provide him an appropriate school placement at the beginning of the 2011–2012 school year and then placing him at Anacostia, which could not provide appropriate services. DCPS does not contest that its failure to place D.C. at the outset of the school year violated the IDEA. But it maintains that D.C. is not entitled to compensatory education for the failure to provide a placement because—as the hearing officer found—D.C. accepted the terms of the June 2012 compensatory education authorization letter,

which remedied any educational harm D.C. suffered.  It further contends that D.C. has not demonstrated that Anacostia was an inappropriate placement.[1]

    A.  Waiver

After finding that DCPS had violated the IDEA, the hearing officer relied on the June 2012 compensatory education authorization letter to find that D.C. had waived any right to compensation.  AR at 19.  Specifically, because the letter stated that it was intended to remedy any educational harm through "today's date," and because counsel for D.C. acknowledged that language, the hearing officer reasoned that D.C.'s acceptance of the tutoring constituted "accord and satisfaction."  Id. at 19–20.  Copeland responds there was no such waiver because the letter was not intended to cover all potential educational harm D.C. suffered, only the issues that were addressed at the IEP meeting held pursuant to the 2011 settlement agreement.

A contractual waiver of a statutory litigation right must be "knowing and voluntary," see Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426–28 (1998) (knowing and voluntary standard applies to waivers of ADEA liability); Russell v. Harman Int'l Indus., Inc., 773 F.3d 253, 255 (D.C. Cir. 2014) (collecting cases regarding Title VII and ERISA), as well as "plain and unambiguous," e.g., Russell v. Harman Intern. Indus., Inc., 945 F. Supp. 2d 68, 76–77 (D.D.C. 2013).  D.C.'s counsel's correspondence with DCPS on this issue was anything but.  In fact, far from establishing that the parties had reached an agreement to waive all claims, the correspondence indicates that counsel for D.C. expressly *declined* to waive claims for IDEA violations unrelated to the 2011 settlement agreement and related IEP meeting.  He specifically objected to the "through today's

---

[1] In her filings before this Court, D.C.'s mother argues for the first time that she was denied participation in the decision making process regarding D.C.'s location of services and that DCPS did not provide D.C. services to help him transition to adult life.  Because neither of these arguments was raised at the administrative level, the Court will not consider them here.  See, e.g., McAllister v. District of Columbia, No. 12-1002 (CRC), 2014 WL 2115467, at *5 (D.D.C. May 21, 2014) ("Issues not raised in the administrative complaint . . . are deemed waived absent agreement of the parties.").

date" language and made clear that the student "will treat this authorization letter as DCPS' determination of comp. ed. pursuant to the August 30, 2011 SA, as that was the requirement of the [IEP] meeting." AR at 153. DCPS did not challenge the substance of D.C.'s counsel's stated understanding of the letter's scope, noting only that the letter used stock language. Id. at 153. Thus, D.C.'s acceptance of the tutoring subject to his counsel's express reservations about the letter's scope does not constitute a waiver.[2]

DCPS's representations at the administrative hearing bolster this position. At the start of the hearing, counsel for DCPS stipulated that the letter covered only what "was agreed to at the settlement agreement compliance meeting" and the period of November 2011 to March 2012. AR at 335–38. On the basis of these representations, counsel for D.C. withdrew one of his claims and declined to call a witness to establish what occurred at the IEP meeting. Id. At the end of the hearing, however, counsel for DCPS changed her position, maintaining that the letter covers all potential FAPE denials through the date of the letter. Id. at 568–72. At the very least, counsel for D.C. should have been permitted to put on evidence of the letter's scope, but the hearing officer denied his request to call an additional witness. Id.

The circumstances surrounding the creation of the compensatory education authorization letter also suggests that it was meant to compensate D.C. only for the issues covered at the IEP meeting. The IEP meeting occurred mere days before D.C.'s parents received the letter, indicating that the letter was a follow-up to the IEP meeting. The settlement agreement that resulted in the IEP meeting explains that settlements between a child and DCPS are generally resolved through a

---

[2] The hearing officer relied on the doctrine of "accord and satisfaction" to find that D.C. had waived his right to recovery. That doctrine, however, governs waiver of the right to recover an unliquidated debt owed under a contract. Weinstein v. D.C. Hous. Auth., 931 F. Supp. 2d 178, 188 (D.D.C. 2013); Pierola v. Moschonas, 687 A.2d 942, 947 (D.C. 1997). It is inapplicable to an analysis of waiver of litigation claims established by statute. Cf. Beard v. D.C. Hous. Auth., 584 F. Supp. 2d 139, 142 (D.D.C. 2008) (improper to apply accord and satisfaction doctrine to waiver of right to sue under the FLSA).

"case closure letter" that "confirm[s] that all of the elements of the settlement agreement have been implemented and the settlement agreement can be considered completed and closed." AR at 49. This appears to be just such a letter. Accordingly, the Court finds that the compensatory education authorization letter did not waive D.C.'s right to recover for DCPS's failure to assign him to a school at the beginning of the 2011–2012 school year. There is also insufficient evidence in the record to determine whether the letter covered the failure to convene an IEP meeting within 30 days of when D.C.'s family provided an independent psychological report.

### B.  Determination of Sufficient Remedy

As an alternative basis for denying D.C. a remedy for DCPS's FAPE violations, the hearing officer found that the services D.C. had received under the June 2012 compensatory education authorization letter were sufficient to remedy any educational harm he suffered. AR at 20. The appropriate compensatory education to remedy a FAPE denial must be reasonably calculated to provide the educational benefits that likely would have accrued to the student from the special education services that the school district should have supplied in the first instance. Reid, 401 F.3d at 524. This determination must a fact-specific, qualitative inquiry tailored to the particular needs of the child. Id.; Gill v. District of Columbia, 770 F. Supp. 2d 112, 117 (D.D.C. 2011), aff'd, No. 11-7032, 2011 WL 3903367 (D.C. Cir. Aug. 16, 2011).

Here, the hearing officer made insufficient factual findings in determining that the compensatory education D.C. received as a result of the letter remedied the harm caused by the FAPE denials. In fact, the hearing officer did not determine what educational harm D.C. experienced. Nor did he explain how the compensatory education D.C. received remedied this harm. It is also unclear from the record whether D.C. received the full extent of the services provided by the compensatory authorization letter. According to the hearing officer, D.C. received 120 to 125 hours of tutoring services under the letter. AR at 10. The letter, however, entitled D.C.

to 150 hours of independent instructional services, 30 hours of independent speech and language services, and 30 hours of independent behavioral support services. Response to Order of the Court Ex. 1, Dec. 5, 2014. Accordingly, the Court will also remand this issue to the hearing officer to determine the educational services that are required to compensate D.C. both for the 2011–2012 school year FAPE denials that the hearing officer identified and for the issues that the parties addressed during the August 2011 settlement discussions and resulting IEP meeting. The hearing officer should then determine if the tutoring D.C. has already received compensated him for the educational benefits he was denied.

### C. Testimony Regarding Anacostia

Finally, Copeland contends that Anacostia was not a proper placement for D.C. because it did not provide necessary services. The hearing officer found that D.C.'s testimony that he did not feel safe at the school was not credible. AR at 15–16. While the Court will accord deference to the hearing officer's credibility determination, Savoy, 844 F. Supp. 2d at 30, D.C.'s testimony was not the only evidence put forward regarding the services available at Anacostia. Counsel for D.C. also attempted to qualify D.C.'s tutor, Christian Roman, as an expert in the field of compensatory education. AR at 448–57. Although Roman had an extensive background in providing special education services and had been qualified as an expert in prior IDEA due process hearings in the District of Columbia, the hearing officer declined to qualify him, stating "I'm not familiar with such an expertise." Id. Although the hearing officer did not permit Roman to testify as an expert, he did testify in a lay capacity that, based on his personal experiences working with other students attending Anacostia, the school does not offer the therapeutic services that D.C. required. AR at 488–92.

The basis for the hearing officer's decision not to qualify Roman was erroneous. A witness need not possess "scientific" or "technical" expertise to qualify as an expert, but may testify so long

as his specialized knowledge would be useful to the trier of fact. Fed. R. Evid. 702, 1972 Advisory Committee Note. Indeed, plaintiffs in IDEA cases routinely rely on testimony by a specialized education expert to establish the compensatory education that is necessary to remedy a FAPE denial. E.g., Jay v. District of Columbia, No. 13-1270, 2014 WL 6808295, at *4 (D.D.C. Dec. 3, 2014); Gardill v. District of Columbia, 930 F. Supp. 2d 35, 44 (D.D.C. 2013); Friendship Edison Pub. Charter Sch, Collegiate Campus v. Nesbitt, 669 F. Supp. 2d 80, 84 (D.D.C. 2009); Brown v. District of Columbia, 568 F.Supp.2d 44, 54 (D.D.C. 2008). The hearing officer also failed to address Roman's lay testimony about the lack of appropriate services at Anacostia. His finding that D.C. offered no competent evidence regarding the school thus conflicts with evidence in the record. As a result, the Court will remand this issue for the hearing officer to reconsider whether, on the basis of Roman's testimony, Anacostia provided the services required to meet D.C.'s IEP.

## IV.     Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the parties' cross motions for summary judgment and remand this case to the hearing officer to make factual findings consistent with this Memorandum Opinion. The Court will leave it to the hearing officer's discretion to determine if he can resolve these issues on the current record or whether he must convene a further hearing.

CHRISTOPHER R. COOPER
United States District Judge

Date:   March 11, 2015